UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| ANTOINE SCOTT, <br>     *Plaintiff/Counterclaim* <br>     *Defendant,* <br><br> v. <br><br> MERCEDES-BENZ FINANCIAL <br> SERVICES USA LLC, <br>     *Defendant/Counterclaim* <br>     *Plaintiff.* | CIVIL ACTION NO. 3:22-cv-00345 |

## ORDER OF DEFAULT JUDGMENT

This matter is before the Court on the Defendant/Counterclaim Plaintiff Mercedes-Benz Financial Services USA LLC's ("MBFS") Motion for Entry of Default Judgment (Doc. 8) and the Brief filed in support of the Motion for Entry of Default Judgment (Doc. 9). For the following reasons, MBFS' Motion is GRANTED.

### I. FACTUAL & PROCEDURAL BACKGROUND

On or about July 9, 2020, Plaintiff/Counterclaim Defendant Antoine Scott ("Scott") purchased a 2015 Mercedes-Benz S550V (Serial No. WDDUG8CB6FA133153) (the "Vehicle") from Hendrick Motors of Charlotte. (Doc.

3 at p. 7). On or about that same date, Hendrick Motors of Charlotte fully assigned its interest in the Retail Installment Sales Contract (the "Contract") to MBFS. (*Id.*). By executing the Contract, Scott agreed to finance the Vehicle under the Contract's terms and conditions. (*Id.* at p. 8). Among other things, Scott agreed to make seventy-two (72) monthly payments to MBFS, beginning on August 24, 2020. (*Id.*). The total amount financed under the Contract was $44,975.17. (*Id.*).

After not receiving the first payment due on August 24, 2020, MBFS mailed Scott a letter advising that his payment was past due and provided him with several options to make the payment. (*Id.*). Scott disregarded that letter and other letters from MBFS addressing his failure to make monthly payments required by the Contract. (*Id.*).

Due to Scott's continued failure to make monthly payments due under the Contract, on or about October 27, 2020, MBFS issued a Notice of Default and Right to Cure & Intention to Repossess. (*Id.*). As a consequence of Scott's default and his failure to cure, MBFS exercised its right under the Contract to repossess the Vehicle and sold it to a third-party. (*Id.*). Thereafter, MBFS advised Scott of the $12,823.70 deficiency owed under the Contract. (*Id.*). Under the Contract, Scott also agreed to pay or reimburse MBFS' attorney's fees and costs incurred relative to the enforcement of Scott's payment obligations. (*Id.*).

2

Despite MBFS' request that Scott satisfy the deficiency amount owed under the Contract, Scott refused to do so. (*Id*. at p. 9). As a result, MBFS has suffered and continues to suffer damages due to Scott's failure to fulfill his obligations under the Contract. (*Id*.). After repossession of the Vehicle, Scott submitted a complaint to the Consumer Financial Protection Bureau (CFPB) claiming to be a victim of identity theft and requested that MBFS delete or remove the MBFS account from his credit report. (*Id*.; *see also* Doc. 9-1 at pp. 1-4). In his CFPB complaint, Scott claimed to have repeatedly communicated with MBFS regarding being an identity theft victim. (Doc. 9-1 at pp. 9–13). Scott further claimed that, despite sending letters and faxing a police report regarding his alleged identify theft, MBFS refused to remove the "fraudulent" account from his credit report. (*Id*.). In response, MBFS' Customer Relations Office sent Scott a letter on January 26, 2022, confirming receipt of the claim submitted to the CFPB. (*See* Doc. 9-1 at p. 15). MBFS placed a "Do Not Call" alert on his MBFS account, as a result of Scott's demand that MBFS cease and desist all communications regarding the account. (*See* Doc. 9-1 at p. 3). By placing a "Do Not Call" alert on Scott's account, MBFS' collection efforts on the account were effectively cancelled. (*Id*.).

To investigate the claimed identity theft, MBFS sent Scott an Identity Theft Packet for him to complete and return. (Doc. 3 at p. 9; Doc. 9-1 at p. p. 3). Scott returned to MBFS a copy of a Charlotte-Mecklenburg Police Department Incident

3

Report ("Incident Report"), bearing Complaint # 20201205-1212-03 on the first page and Complaint # 20200945-1322-03 on the second page, dated 11/19/2020. (Doc. 9-1 at p. 3). As part of its investigation, MBFS contacted the Charlotte-Mecklenburg Police Department to confirm the validity of the Incident Report. (*See id.*). In the course of its investigation, MBFS discovered that the Incident Report was fraudulent, as it was not prepared by the Charlotte-Mecklenburg Police Department and the Incident Report does not correspond to any record created and maintained within the Charlotte-Mecklenburg Police Department's record system. (*See* Doc. 9-2).

Due to the fake Incident Report, MBFS' business operations were impacted, requiring MBFS personnel to unnecessarily devote time and resources in responding to Scott's complaint lodged with the CFPB. (*See* Doc. 9-1 at pp. 1–4). In addition, because Scott used the fake Incident Report as grounds for the legal claims asserted in this action, MBFS unnecessarily incurred attorney's fees, costs, and expenses in defending itself against Scott's claims. (*Id.*). In defending against Scott's claims and enforcing its contractual rights, MBFS has paid attorney's fees totaling $10,688.00 and costs and expenses totaling $845.69. (*See* Doc. 9-3).

On August 5, 2022, MBFS filed a Counterclaim against Scott. (Doc. 3 at p. 6). After the time to serve a responsive pleading had passed, MBFS filed a motion requesting that the Clerk of Court, pursuant to Rule 55(a) of the Federal Rules of

Civil Procedure, enter Scott's default due to his failure to plead or otherwise defend the Counterclaim filed by MBFS against him. (Doc. 6). On October 13, 2022, Entry of Default was entered by the Clerk of Court against Scott. (Doc. 7).

## II. DISCUSSION

Upon default, the well-pleaded facts alleged in the Counterclaim are deemed admitted. *See Endo Pharms., Inc. v. Yevsin*, No. 3:17-CV-00456-GCM, 2018 WL 3059622, at *1 (W.D.N.C. Apr. 23, 2018) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). "Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails to plead or otherwise defend in accordance with the Rules." *CFTC v. PMC Strategy, LLC*, 903 F. Supp. 2d 368, 375 (W.D.N.C. 2012) (citation and quotation marks omitted). "Entry of default judgment is left to the sound discretion of the trial court." *Id*. "Although the Court must make an independent determination regarding damages, an evidentiary hearing is not required; rather, the Court may rely on affidavits or documentary evidence in the record to determine the appropriate sum." *Id*. (citation omitted).

MBFS asserts three counterclaims against Scott: 1) breach of contract; 2) violation of the fair credit reporting act ("FCRA"); and 3) fraud. The Court finds that default judgment is due to be entered on each of these claims.

### A. Breach of Contract Counterclaim

For the breach of contract counterclaim, Scott admitted that, though he agreed to make seventy-two (72) monthly installment payments to MBFS beginning on August 24, 2020, he missed the first payment as well as all subsequent installment payments. He also admitted that, as a result of his breach of contract, MBFS suffered damages in the form of a $12,823.70 deficiency.

Moreover, Scott's contract with MBFS provides that, if MBFS hires an attorney to collect what Scott owes, Scott must pay attorney's fees and court costs as the law allows. (*See* Doc. 9-1 at p. 4). Generally, "a party may not recover its attorney's fees unless authorized by statute." *Martin Architectural Prods., Inc. v. Meridian Constr. Co.*, 574 S.E.2d 189, 192 (N.C. Ct. App. 2002). However, North Carolina law permits parties to "any note, conditional sale contract or other evidence of indebtedness" to recover attorney's fees resulting from a breach of the same, "not in excess of fifteen percent (15%) of the outstanding balance owing." N.C. Gen. Stat. § 6-21.2 (2020).

For its breach of contract counterclaim, MBFS seeks an award of $1,920.00 in attorney's fees, which does not exceed the 15% statutory cap and is a reasonable amount given the time and efforts expended. (*See* Doc. 9 at pp. 10–11; Doc. 9-1; Doc. 9-3; Doc. 9-4). It also seeks to recover the $402.00 filing fee as well as pre- and post-judgment interest on the deficiency amount, in accordance with N.C.G.S.

§ 24-5. (*Id.*) Having reviewed the evidentiary materials submitted by MBFS, the Court finds that MBFS is due to be awarded the requested amounts for its breach of contract counterclaim.

### B. Fair Credit Reporting Act Counterclaim

For the FCRA counterclaim, based on the facts deemed admitted and the Court's review of the evidentiary materials submitted by MBFS, Scott filed the Complaint in bad faith. Section 1681n of the FCRA, governing civil liability for willful noncompliance, and 15 U.S.C. §1681o of the FCRA, governing civil liability for negligent noncompliance, provide that "[up]on a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." *See Bravo v. IQ Data Int'l, Inc.*, No. 8:21-cv-00887-TPB-SPF, 2022 WL 3867754, at *4 (M.D. Fla. Aug. 9, 2022). While "bad faith" is not defined under the FCRA, "as ordinarily used in the attorney's fee context, [the term] requires a showing either that the party subjectively acted in bad faith—knowing that he had no viable claim—or that he filed an action or paper that was frivolous, unreasonable, or without foundation." *Clemons v. Cutler Ridge Auto., LLC*, No. 6-21648-CIV-KING/BANDSTRA, 2008

WL 11409007, at *4 (S.D. Fla. June 24, 2008) (citation and quotation marks omitted).

Scott knew that he had no viable FCRA claim before he filed the Complaint. Scott's FCRA claim is based on MBFS' continued reporting of his account to credit reporting bureaus after the claimed filing of the Incident Report with the Charlotte-Mecklenburg Police Department. As established by the Declaration of Kiersten Frost—the Manager of the Police Department's Records Management Division, Scott never reported a claimed "identity theft" and, in order to conceal that fact, he prepared and submitted the fake Incident Report to MBFS. (*See* Doc. 9-2). Because the fake Incident Report served as the basis for Scott's FCRA claims, his Complaint was filed in bad faith and needlessly required MBFS to incur attorney's fees and costs to defend the claims. *See Lewis v. Trans Union LLC*, No. 04-6550, 2006 WL 2861059, at *4 (N.D. Ill. Sept. 29, 2006) (awarding attorney's fees pursuant to § 1681n(c) where plaintiff "knew of the falsity and baselessness of allegations in the complaint when it was filed").

MBFS requests attorney's fees pursuant to the FCRA. (Doc. 3 at p. 11). Sections 1681n(c) and 1681*o*(b) of the FCRA provide that "[o]n a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the

work expended in responding to the pleading, motion, or other paper." 15 U.S.C. §§ 1681n(c), 1681*o*(b). "The starting point for establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).

In exercising its discretion in the application of this lodestar method, the Court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)). "Although the Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable." *Firehouse Restaurant Grp., Inc. v. Scurmont, LLC*, No. 4:09-cv-618-RBH, 2011 WL 4943889, at *12 (D.S.C. Oct. 17, 2011) (citing *EEOC v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990)). Notably, MBFS has been billed for 33.4 hours of legal services related to Scott's claims, and for these

services, MBFS paid $320.00 per hour, which the Court finds is a reasonable rate given the experience and expertise of MBFS' counsel. (*See* Doc. 9-3; Doc. 9-4).

Therefore, having considered the relevant lodestar factors and the evidentiary materials, the Court agrees with the arguments submitted by MBFS (Doc. 9 at pp. 14–19) and finds that MBFS is due to be awarded reasonable attorney's fees totaling $8,768.00 as well as $443.69 for expenses in accordance with 15 U.S.C. §§ 1681n, 1681o.

### C. Fraud Counterclaim

Finally, the Court addresses MBFS' fraud counterclaim. In order to recover on a fraud claim, the following elements must be established: (1) a false representation or concealment of a material fact, (2) which is reasonably calculated to deceive, (3) which is made with intent to deceive, (4) which does in fact deceive, (5) and which results in damage to the injured party. *Forbis v. Neal,* 649 S.E.2d 382, 387 (N.C. 2007). Additionally, the plaintiff must establish that any reliance on the false representations was reasonable. *Id.*

All of the elements are satisfied in this matter: Scott submitted a complaint to the CFPB claiming to be a victim of identity theft and requested that MBFS remove the MBFS account from his credit report. (*See* Doc. 9-1; Doc. 9-2). To investigate the claimed identity theft, MBFS sent Scott an Identity Theft Packet for him to complete and return. (Doc. 9-1). Scott returned to MBFS a copy of the Incident

Report. (*Id.*). Based on Scott's formatting, title and contents of the Incident Report, MBFS believed that the Incident Report was valid. (*Id.*). In reliance on the fake Incident Report prepared by Scott, MBFS ceased actions to collect the outstanding debt owed by Scott. (*Id.*). In addition, MBFS' business operations were impacted by the fake Incident Report in a number of ways, including requiring MBFS personnel to unnecessarily devote time and resources in responding to Scott's complaint lodged with the CFPB. (*Id.*). The fake Incident Report cost MBFS at least $500.00 in lost personnel time and resources that could have been devoted to legitimate business matters. (*Id.*).

MBFS' claim for punitive damages is governed by N.C. Gen. Stat. § 1D-15(a), which states that punitive damages may be awarded only upon a showing of liability for compensatory damages, coupled with the presence of one of three aggravating factors: (1) fraud, (2) malice, or (3) willful or wanton conduct. Willful or wanton conduct means "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § lD-5(7). Here, Scott fraudulently prepared the Incident Report as part of a scheme to evade the debt owed to MBFS and have that debt wiped from his credit report. Furthermore, due to Scott's willful misuse of the fake Incident Report as grounds for the legal claims

asserted in this action, MBFS unnecessarily incurred attorney's fees, costs and expenses in defending itself against Scott's claims.

Having reviewed the evidentiary materials—particularly the Declaration of Kiersten Frost, (Doc. 9-2), the Court finds that MBFS is due to be awarded $500.00 in compensatory damages and $1,000.00 in punitive damages. The award of punitive damages is justified because of Scott's egregious behavior. Obviously, the fabrication of a fake Police Incident Report to avoid payment of a lawful debt causes significant societal harm. Punitive damages are appropriate to deter such willful and wanton conduct.

### III. CONCLUSION

For the foregoing reasons, MBFS' Motion for Entry of Default Judgment is GRANTED. (Doc. 8). Accordingly, as explained above, it is hereby, ORDERED, ADJUDGED, and DECREED that MBFS shall be awarded the following:

1) Breach of Contract Counterclaim: $12,823.70, plus $3,277.25 in pre-judgment, $1,920.00 for attorney's fees, $402.00 for the filing fee, and post-judgment interest in accordance with N.C. Gen. Stat. § 24-5;
2) Fair Credit Reporting Act Counterclaim: Attorney's fees totaling $8,768.00, plus $443.69 for expenses, in accordance with 15 U.S.C. §§ 1681n, 1681o; and
3) Fraud Counterclaim: $500.00 in compensatory damages and $1,000.00 in punitive damages.

Signed: November 16, 2023

Graham C. Mullen
United States District Judge